## SWEENY *v.* UNITED STATES.

The doctrine of *United States* v. *Clyde* (13 Wallace, 35), of *Mason* v. *United
    States* (*supra*, p. 67), and of other cases, affirmed, and the doctrine re-
    declared and applied, that where a claim is disputed by the govern-
    ment, and the claimant accepts a certain sum in settlement thereof and
    gives a receipt in full therefor, it is a bar to a subsequent action in the
    Court of Claims for any residue asserted to be due.

APPEAL from the Court of Claims; the case being thus:

One Sweeny, owner of a steamer, chartered her at Louis-
ville, March 3d, 1863, to the United States (the assistant
quartermaster of the military department where she was,
signing the charter-party in behalf of the government), at
$175 per day; no term of service being specified.    On the
10th the *per diem* was increased, in writing, to $200, and was

so paid till the 20th March. In that month she was ordered and went into another military department; and came under the control of an assistant quartermaster at St. Louis, Captain Parsons, under whose control she remained till the 17th of September, when she was discharged.

It was not conceded by Captain Parsons that the steamer was retained in the service under the charter-party. On the contrary, her account was stated by him on the 15th of September, 1863 (running from the 21st of March to the 31st of July, 1863), at $140 a day. This account was paid by him, and receipted for by the owner of the boat on the 22d of October following. Subsequent accounts for subsequent services were also stated and paid by Captain Parsons, and receipted for by the owners of the boat, none of which accounts or receipts referred in terms to any charter-party. The owner remonstrated at the rate allowed, and, on the 19th of December, 1863, a settlement was made with him by Captain Parsons, by allowing to him, from the 21st of March to the 31st of August, $5 per day, which amount was received and receipted for by the claimant, "*as in full of the above account,*" *being the account for the steamer's services.*

But no release under seal was executed by the claimant, nor was any other consideration given by the government than that expressed of $5 per day for the term named.

Sweeny now filed a petition in the Court of Claims, asking for compensation at the charter rate of $200 per day for the one hundred and eighty-one days, between the 20th of March and the 17th of September.

The Court of Claims dismissed the petition on the ground that the demand of the claimant was a doubtful and disputed claim, which might be the subject of a valid parol compromise, and that the payment of the $5 a day for the term named, constituted a valid and binding compromise, which barred the claimant's action. From this action of the Court of Claims the owner of the vessel appealed.

*Mr. James Hughes, for the appellant; Mr. C. H. Hill, Assistant Attorney-General, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Claims against the United States which are disputed by the officers authorized to adjust such accounts may be compromised, and if the claimant voluntarily enters into such a compromise and accepts a smaller sum than the claim and executes a discharge in full for the whole claim he is bound by the adjustment and cannot sue for what he voluntarily relinquished.

Sweeny was the owner of the steamer Ben. Franklin, and on the 3d of March, 1863, he chartered the steamer to the United States for $170 per day, the charter-party being signed by the owner of the steamer and an assistant quartermaster, without any stipulation as to the term of service. He complained of the rate allowed and subsequently applied for an increase, and the quartermaster at St. Louis directed that the steamer should be allowed $200 per day, by an indorsement on the application.  She continued under the first contract and was borne upon the returns of the assistant quartermaster for the months of March and April following, but the claimant was only paid at that rate up to the 20th of March, and the steamer was not borne upon the returns of the assistant quartermaster after April of that year.  He ordered her to proceed to Milliken's Bend, in the Mississippi River, and in so doing she passed within the limits of another military department, and came under the control of another assistant quartermaster, where she remained until the 17th of September following, when she was discharged.

It was denied by the assistant quartermaster that the steamer was retained in service under the original charter-party, and he stated the account for her services from the 21st of March to the 31st of July, at $140 per day, which was regularly paid by the assistant quartermaster, and was duly receipted for by the claimant, and it appears that none of those accounts or receipts make any reference to the charter-party.

Complaint was made by the owner of the steamer that

the compensation allowed was insufficient, and the assistant quartermaster, on the 19th of December of that year, made a settlement with the claimant and increased the allowance to $145 per day, and the finding of the Court of Claims shows that the account made out in that way was received and receipted by the claimant " as in full of the above account," being the account made out in that way for the services of the steamer.

Enough appears to satisfy the court that the charter-party was superseded, and that the claim was in fact for a *quantum meruit,* and as such that it was the proper subject of compromise within the principle adopted and applied in the case of *Mason* v. *United States,* decided at the present term.*   Prior to the adjustment the sum allowed was $140 per day, but that allowance was not satisfactory to the claimant, and the assistant quartermaster, as matter of compromise, agreed to add $5 per day in addition to that allowance, and the claimant having accepted the offer, received the money, and executed a discharge in full of the claim, cannot prosecute a suit in the Court of Claims for what he voluntarily relinquished in the compromise.

Parties may adjust their own disputes, and when they do so voluntarily and understandingly, no appeal lies to the courts to review their mutual decision.

DECREE AFFIRMED.

---

* See *supra,* the preceding case.