## SAVAGE, EXECUTRIX, v. UNITED STATES.

1. The holder of treasury-notes, payable three years after date, which were issued under the authority of an act of July 17, 1861 (12 Stat. 259), demanded payment in gold of the principal and interest due thereon. The Secretary of the Treasury refused payment in that medium, but offered it in legal-tender notes. The holder, under protest, received the offered

payment in full discharge of the notes, surrendered them to be cancelled, and brought an action against the United States to recover the difference in the market-value of gold and of legal-tender notes at the date of such payment. *Held*, that by accepting the medium offered, and surrendering the treasury-notes, the holder waived all claim, independently of the question whether or not that medium was a legal tender in payment of them.

2. The protest, being unauthorized by law, had no efficacy to qualify the voluntary surrender of the treasury-notes.

APPEAL from the Court of Claims.

The case was argued by *Mr. Conway Robinson* for the appellant. The court declined to hear *Mr. Assistant Attorney-General Edwin B. Smith* for the appellee.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Power was conferred upon the Secretary of the Treasury, by the act of the 17th of July, 1861, to borrow $250,000,000, for which he was authorized to issue bonds or treasury-notes; the treasury-notes to be of any denomination fixed by the secretary, not less than $50, and to be payable three years after date, with interest at the rate of seven and three-tenths per centum per annum, payable semi-annually. Sect. 3 provides that the secretary shall cause books to be opened for subscription to the treasury-notes, for $50 and upwards, at such places as he may designate, and under such rules and regulations as he may prescribe, to be superintended by the assistant treasurers at their respective localities, and at other places by such depositaries, postmasters, and other persons as he may designate, giving notice thereof as therein directed. 12 Stat. 259.

Pursuant to the authority conferred, the secretary appointed Jay Cooke, one of the special agents, to open a book for subscription to the treasury-notes; and it appears that the secretary addressed to him, as such special agent, a circular-letter of instructions, in which, among other things, he stated that "all payments must be made in the lawful coin of the United States, and that, whenever the amount subscribed shall not be paid within the period prescribed, the first payment shall be forfeited to the United States."

Sufficient appears in the finding of the court to show that the special agent opened a book for subscriptions, and that he published an advertisement, describing what the denominations

of the notes would be, and giving the date when they would be issued; and that he stated that the notes would be "payable in gold in three years, or be convertible into a twenty-year six-per-cent loan, at the option of the holder; that each note would have interest-coupons attached, which could be cut off and collected in gold at the Mint every six months, and at the rate of interest therein prescribed."

Subsequent to the publication of that advertisement, the testator of the plaintiff, then in full life, became the purchaser of treasury-notes to the amount of $15,000, of the description named in the act of Congress and the advertisement, dated as described in the finding of the court; and it appears that all of the notes were in the following form: "Three years after date, the United States promise to pay to the order of —— dollars, with interest at $7\frac{3}{10}$ per cent, payable semi-annually."

On the 10th of December, 1864, the secretary gave notice that the department was ready to redeem the notes on presentation, and that he would pay the same in lawful money, or by converting the same into bonds as authorized by law, and that interest would cease on all such notes not so presented after three months from that date, at which time the right of conversion would also cease.

Throughout, the testator of the plaintiff insisted that it was his right to have the notes paid in gold; and on the 3d of March, 1866, he caused the notes to be transmitted here to certain bankers, with instructions to present the same at the Treasury and ask for the payment of the same, with interest, in gold, and with directions, that, if the payment in gold were refused, to accept the currency under protest. Payment in gold was subsequently refused; and the agents accepted the principal and interest after maturity in legal-tender notes, under protest, as directed by their employer.

Gold, at the time the notes were presented, was worth in the market a premium of thirty-two cents on the dollar over the legal-tender notes accepted in payment by the agents acting for the testator of the plaintiff. He demanded payment in gold; but his agents accepted the currency under protest, by his directions, the payment in gold having been refused.

Based on these facts, the executrix of the decedent instituted

the present suit in the Court of Claims to recover the difference in the market value of gold and legal-tender notes at the date of the payment made by the United States to the testator of the plaintiff. Judgment was rendered for the defendants in the court below, and the plaintiff appealed to this court. Appended to the finding of facts are the conclusions of law reported by the court, which, in the view taken of the case, it will not be necessary to reproduce for separate examination.

. Four errors are assigned by the present plaintiff: (1.) That the court below erred in holding that the subscription agent had no lawful authority to make the statement contained in the advertisement, that the treasury-notes were payable in gold. (2.) That the same court erred in holding that the statement, and what appears in the record in connection therewith, did not in law bind the defendants to pay the notes in gold. (3.) That the court erred in holding that the notes were lawfully paid by the defendants in the legal-tender notes. (4.) That the court erred in holding that the plaintiff, as executrix of the decedent, had no right of action, as against the defendants, to recover the difference in value at that time between the legal-tender notes and gold.

Questions not necessarily involved in the matters of fact found by the court below will not be re-examined, even though they are presented in the assignment of errors. Controversies between parties usually depend, in the first instance, upon the matters of fact out of which the controversy in the particular case arises; and it often happens, even when it is suggested that the decision depends upon the legal questions presented, that it is, nevertheless, important to examine the facts with care, in order to ascertain whether the supposed legal questions do actually arise in the case.

Payment of the treasury-notes was accepted by the testator of the plaintiff; and it appears that he, at the time the payment was made, then being in full life, surrendered the notes to the secretary for cancellation. Neither deception, mistake, nor undue advantage, is suggested; but the whole record shows that it was an honest difference of opinion between the secretary and the decedent as to the rights of the parties, and that it terminated by the voluntary acceptance of the legal-tender

notes, on the part of the agents of the decedent, in lieu of gold, as offered by the secretary, and by the surrender of the treasury-notes to him for the United States. Such an acceptance of payment was a waiver of the claim antecedently made, and amounted to a full discharge of the same, independently of the question, whether the notes accepted in payment are or are not a legal tender, as insisted by the counsel for the defendants.

Had not the treasury-notes held by the decedent been surrendered to the United States, the effect of the acceptance of the currency-notes in payment might possibly have been different; but it is clear that a protest under such circumstances is utterly insufficient to qualify the effect of the waiver evidenced by the acceptance of what was offered in payment of the treasury-notes in lieu of gold. Gold was claimed; but the secretary refused to pay in that medium : and the agents of the decedent, acting in pursuance of his instructions, accepted the medium offered by the secretary, knowing full well that it was offered in full discharge of the treasury-notes; and it appears that they not only accepted the medium of payment offered by the secretary, but surrendered the treasury-notes to the secretary, as the well-known financial agent of the United States.

Actual surrender of the treasury-notes to the secretary was a condition precedent to the right of the secretary to redeem the same, and that fact was as well known to the agents of the decedent as to the secretary; and it must be that they knew full well that the payment of the treasury-notes could not be made unless the surrender was absolute and unconditional.

Viewed in the light of these suggestions, it must be held that the protest, being unauthorized by law, was a mere *ex parte* act, without any legal efficacy to qualify the voluntary surrender of the treasury-notes, which both parties understood to be absolute and unconditional.

Due protest at the time of paying custom duties has the effect to give the merchant the right to sue the collector to recover back duties illegally exacted, because the act of Congress provides that the protest in such a case shall have that effect. 5 Stat. 727. Congress might doubtless give a corresponding effect to such a protest in a case like the one before the court: but it is scarcely necessary to remark, that

there is no such statutory provision; and, in the absence of it, the ruling must be, that the protest is wholly insufficient to qualify the absolute and unconditional surrender of the treasury-notes.

Enough appears to show that the surrender was made with a full knowledge of all the circumstances, and without the least compulsion; that the secretary gave public notice that the department was ready to redeem the notes, on presentation, by paying the amount in lawful money, or by converting the same into bonds, as authorized by law. Treasury-notes of the kind, to a large amount, were over-due; and the holders of the same were given the option to accept payment in legal-tender notes, or in the bonds authorized by law; and they were informed that interest on all such as should not be presented within the next three months would cease from the expiration of the period allowed for their presentation.

Fifteen thousand dollars of the treasury-notes were held by the decedent, then in full life, and he claimed that he should be paid in gold; and it appears that the secretary refused to make the payment in that medium, and insisted that the United States had the right to redeem the same, or make the payment in the manner proposed in the published notice. Payment in gold being refused, the decedent transmitted the over-due notes to their agents here, with instructions to accept payment, under protest, in accordance with the terms proposed by the secretary; and the finding of the court shows that his agents obeyed his instructions, and that the whole amount of the notes presented, including the interest thereon after maturity, was paid in the medium proposed by the secretary.

Prompt payment, no doubt, was desired; but the decedent was under no legal compulsion to accept any other medium of payment than that which he demanded. Both he and his agents were doubtless convinced that the secretary would not recede from the position he had taken; but he was at perfect liberty to reject the terms proposed, and to refuse to surrender the over-due securities which he held.

Duress, if proved, would rebut the assumption of assent, and would doubtless be sufficient to relieve a party in such a case from the effect of a compromise procured by such means: but

the burden of proof to establish such a charge, in every such case, is upon the party making it; and, if he fails to introduce any such evidence to support it, the presumption is that the charge is without any foundation.

Unconditional acceptance of a medium of payment different from that promised by the United States, or absolute acceptance of a smaller sum from the Secretary of the Treasury than the one claimed from the United States, even in a case where the amount relinquished is large, does not leave the United States open to further claim on the ground of duress, if the acceptance of the different medium or the smaller sum is voluntary, and without intimidation, and with a full knowledge of all the circumstances; nor is the case changed if it appears that the claimant was induced to accept the different medium or the smaller sum in full as a means to secure an earlier payment of the claim than he could otherwise hope to procure. *Mason* v. *United States*, 17 Wall. 74.

Parties having claims against the United States, which are disputed by the officers authorized to adjust the same, may compromise the claim, and may accept ·payment in a different medium from that promised, or may accept a smaller sum than that claimed; and where it appears that the claimant voluntarily entered into a compromise, and accepted payment in full in a different medium from that promised, or accepted a smaller sum than that claimed, and executed a discharge in full for the whole claim, or voluntarily surrendered to the proper officer the evidences of the claim for cancellation, he cannot subsequently sue the United States, and recover in the Court of Claims for any part of the claim voluntarily relinquished in the compromise.    *Sweeny* v. *United States*, 17 Wall. 77; *United States* v. *Child*, 12 id. 244; *United States* v. *Justice*, 14 id. 549.

Decisions of the kind by this court are quite numerous, and they show beyond all doubt that parties may adjust their own controversies in their own way, and that when they do so voluntarily, and with a full knowledge of their rights and all the circumstances, no appeal lies to the courts to review their mutual decision.   Courts cannot make contracts for parties; and if parties understandingly contract to adjust a controversy

between them in a particular way, and actally execute the contract, they are both bound to regard the controversy as at an end.

Taken as a whole, the findings of the court below show beyond all doubt that the decedent, voluntarily and with a full knowledge of all the circumstances, elected to accept payment of the treasury-notes in the manner proposed by the secretary, and that the surrender of the same to the United States was absolute and unconditional. Nothing less can be inferred from the communication of his agents enclosing the securities when the same were transmitted for redemption, in which his agents say that they "present the notes for payment in accordance with the terms proposed " by the department. Such an acceptance, if intended to waive every variation from the terms antecedently demanded, could hardly be more complete or explicit; nor is its real character changed in any respect by the fact that the agents asked leave in the same communication " to enter protest, under their instructions, against payment otherwise than in gold."

They surrendered the securities, and asked leave to enter the protest in the same communication, which was, in effect, saying, " Our principal still thinks he ought to be paid in gold ; but, inasmuch as the department declines to pay in that medium, he has decided to accept payment in the medium which you propose."

Suppose the controversy had respect to the sale and purchase of an article of personal property, instead of the redemption of treasury-notes, and that it appeared that the price asked by the owner was $100, and that a person desiring to purchase the same had offered the owner $90 for it, which the owner at the time declined to accept: of course the bargain, in that state of the case, would not be complete. But suppose the owner of the article should subsequently forward the same to the person who made the offer, informing him that he would accept the offer: no one, it is presumed, would hesitate to decide that the voluntary acceptance of the offer concluded the bargain, if the person who made the offer elected to pay the money, even though the seller might have written in the same communication that he ought to have ten dollars more, and should

·protest that the article was worth the whole amount he asked for it in the prior negotiations. Remarks of the kind would not have the effect to qualify the acceptance of the offer and the unconditional delivery of the article.

Apply that rule to the case before the court, and it is clear that the protest of the agents did not have the effect to qualify the voluntary acceptance of the terms proposed by the secretary, and the absolute and unqualified surrender of the securities to the United States, and that there is no error in the record.                    *Judgment affirmed.*