Campbell, Chief -Justice,
delivered the opinion of the court:
This action involves claims arising at different times— 1914 to June, 1916 — some while the railroad was under the control and management of the original company, some while that company’s affairs were in the hands of receivers, and some after the property sold in mortgage foreclosure proceedings had been acquired and Avas being operated by the plaintiff, a new and independent corporation. The petition was'filed February 2, 1921. Whether part of it is affected by section 3477, Kevised Statutes, relating to assignments of claims, we need not inquire (see St. Paul & Duluth Railroad Company case, 112 U. S. 733), because there is a question common to each of the asserted claims the determination of which if adverse to plaintiff will determine the entire claim.
Using the one name for all, it appears that the plaintiff transported certain Government employees upon the usual *73 requests for transportation. It rendered its bills during the period involved upon forms prescribed by the Comptroller of the Treasury and duly approved under the provisions of the Dockery Act, 28 Stat. 206. The bills were paid, by the disbursing- officer in the amount claimed by check drawn by him on the Treasurer of the United States in favor of plaintiff. In due course these checks were collected. The plaintiff now claims that its bills were not subject to land-grant deductions; that the several persons transported, while they were employees of the Government, were not troops of the United States or within the meaning' of the land-grant statutes; and that it is entitled to recover the amounts it deducted in its bills as land-grant deductions. The plaintiff could have used a form prescribed for bills where no land grant was involved, but the bills upon that form would not have been paid by the disbursing officer. It voluntarily chose and used the form prescribed for cases of land-grant deduction, and the bills actually rendered stated in each instance the “ amount claimed.” Following the statement of the bill and a part of the form itself was the required certificate of its correctness, duly executed, and as follows:
“ I certify that the above account is correct and just; that the services have- been rendered as stated; that payment therefor has not been received; and that the rates charged are not in excess of the lowest net rates available for the Government, based on tariffs effective at the date of service.”
The comptroller had ruled prior to the service in question that bills for transportation were subject to land-grant deductions when they involved the classes of employees mentioned, a ruling which obtained until the decision in the case of Union Pacific R. R. Co., decided by this court February 19, 1917, 52 C. Cls. 226; affirmed by the Supreme Court. 249 U. S. 354. The petition in that suit was filed in April. 1915. The facts showed that the plaintiff therein had presented to an auditor for direct settlement its bills at full commercial rates without land-grant- deductions and brought suit after the accounting officers, including the comptroller, had refused over the objection and protest of the carrier to pay the rates charged. In the instant case there ivas no *74 auditor’s settlement. As sustaining its contention that the creditor may always go to the debtor and collect as much of his claim as the debtor will pay, and unless an accord and satisfaction has been effected he may then sue for the balance, the plaintiff’s brief cites a number of cases on the general question that the payment of part of a bill is not an accord and satisfaction. It is not difficult to find decisions in different courts on either side of the question as to what will constitute an accord and satisfaction, but these conflicting decisions need not be considered, because the decisions of the Supreme Court of the United States are controlling. In the Savage Case, 92 U. S. 382, 388, it is said: “ Parties having claims against the United States which are disputed by the officers authorized to adjust the same may compromise the claim and may accept payment in a different medium from that promised or may accept a smaller sum than that claimed; and where it appears that the claimant voluntarily entered into a compromise and accepted payment in full in a different medium from that promised or accepted a smaller sum than that claimed and executed a discharge in full for the whole claim, or voluntarily surrendered to the proper officer the evidences of the claim for cancellation, he can not subsequently sue the United States and recover in the Court of Claims for any part of the claim voluntarily relinquished in the compromise.” Sweeney v. United States, 17 Wall. 77; United States v. Justice, 14 Wall. 549.
In DeArnaud’s case, 151 U. S. 483, a bill was presented for $3,600. The Secretary authorized the disbursing clerk to pay $2,000 in full of claim. The account was restated and $2,000 was paid DeArnaud, who gave a receipt in full of the account. It was held that in the absence of allegation and evidence that the receipt was given in ignorance of its purport, or in circumstances constituting duress, it must be regarded as an acquittance in bar of any further demand. See also Child,s case, 12 Wall. 232, 243; Pacific Railroad case, 158 U. S. 118, 122. In Chicago, Milwaukee & St. Paul Railway Co. v. Clark, 178 U. S. 353, where the decisions are reviewed, it is said (p. 367) that the cases are many in which it has been held that where an aggregate amount is in dispute the payment of a specified sum conceded to be due (that is, *75 by including certain items but excluding disputed items) on condition tliat the sum so paid shall be received in full satisfaction will be sustained as an extinguishment of the whole. This case approves the rule stated in Fuller v. Kemp, 138 N. Y. 231, and Nassoi v. Tomlinson, 148 N. Y. 326, 330, that where it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as.“unliquidated” within the meaning of that term as applied to the subject of accord and satisfaction, and it is said (p. 364) that the rule that where a liquidated sum is due the payment of a less sum in liquidation of the whole is not binding as such for want of consideration has been much questioned and qualified, and the result of the modern cases is that the rule only applies when the larger sum is “ liquidated,” and when there is no consideration whatever for the surrender of part of it. As already stated, the larger sum is not regarded as “ liquidated ” within the meaning of the rule when there is a real dispute as to some of the items and an agreement as to others, the latter only being paid. See Baird's case, 96 U. S. 430. In the instant case the items in question had been held by the comptroller to be proper deductions, and the most the plaintiff can claim under the rule stated is that there was a real dispute about them. Notwithstanding this, the plaintiff itself cut out all disputed amounts, rendered its bills, and received payment of the entire “ amount claimed.”
This court has decided that where a .plaintiff presents his bills to disbursing officers, certifies their correctness, and receives payment of the amounts claimed, he can not thereafter recover amounts which he deducted from items in his bills. Baltimore & Ohio Railroad Co. case, 52 C. Cls. 468. Where recovery was sought of the difference between the amount claimed in the stated bills and the amount the carrier would have received if paid at full commercial rates without land-grant deductions, it appearing that the carrier’s bills as rendered were paid, this court, following the Baltimore & Ohio Railroad Co. case, held there could be no recovery. Oregon Washington R. R. & Nav. Co. case, 54 C. Cls. 131, 137. This decision was affirmed by the Supreme Court on appeal, 255 *76 U. S. 339, 347. Tlie question presented in the instant case is likewise controlled by these cases unless a different conclusion should be reached because of the fact that the bills rendered on the approved forms to the disbursing officers and certified to be correct had also on their face a statement as follows: “As the United States Government accounting officers claim they have no authority to allow or pay for the transportation of (here is typewritten the class of travel objected to) more than the fare for troops of the United States, such fares are shown herein, but under protest, and the Western Pacific Kailway Co., for itself and connecting carriers, does not waive (?) of its rights to full published tariff fares, and payment at any less amount will be accepted as part payment only for the services performed.” The effect to be given such a statement involves a consideration of the Government’s accounting system. This system as it existed prior to the Dockery Act was the subject of an elaborate exposition in McKnighfs case, 13 C. Cls. 292. The manner in which accounts against the Government are settled by accounting officers since the “ Dockery Act ” — the act of July 31, 1894, 28 Stat. 206 — is stated in the two cases mentioned, Baltimore & Ohio Railroad Co. and Oregon-Washington R. R. & Nav. Co., and more fully in the opinion by Judge Downey in Southern Pacific Railroad Co., decided this day, ante, p. 36.
This act of 1894 was the work of a joint congressional committee, which established a practically new system of accounting. It creates the office of Comptroller of the Treasury, and while giving to this officer the duties and powers that had pertained to designated officers, it grants to him additional, powers and provides a system of accounting designed to be comprehensive and expeditious. It provides for auditors for the several executive departments who may receive and examine all accounts Avithin the jurisdiction of the respective departments and “ certify the balances arising thereon to the Division of Bookkeeping and Warrants.” Their action is subject to review by the comptroller. In case of a decision by any of these making an original con *77 struction, or modifying an existing one of statutes, the same must be reported to him, the payment of any items in any account affected by such construction to be suspended until action thereon by the comptroller. This officer and, in a more limited sense, the auditors have quasi-judicial functions. Disbursing officers are not made a part of this accounting system. They are authorized, as also is the head of any executive department or other establishment, to apply to the comptroller for a “ decision upon any question involving a payment to be made by them.” If his decision be followed, it protects them against liability on account of payments made in accordance therewith. See 5 Comp. Dec. 727; 1 Comp. Dec. 502. While the disbursing officers in the instant case were dealing with one character of disbursements it is to be borne in mind that the principle involved here applies with equal force to their transactions in the many other kinds of bills they have to deal with.
It may be said generally that all of the Government expenditures are made through disbursing agents and the comptroller has prescribed a variety of forms. See 14 Comp. Dec. 945. The disbursing officers having public money intrusted to them for disbursement must deposit the same as required by statute and draw for the same only as it may be required for payments to be made in pursuance of law, and only in favor of the persons to whom payment is made. They must render their áccounts regularly “ with the vouchers necessary to the correct and prompt settlement thereof.” Rev. Stat. sec. 3620, 3622; act, February 27, 1877, 19 Stat. 249; act, July 31, 1894; Dockery Act, sec. 12. They are connected with various executive departments. In the instant case the disbursing officer was a member of the Quartermaster’s Corps and may appropriately be called a disbursing quartermaster. There are a large number of these disbursing officers and the Quartermaster’s Manual shows a list of 100 or more places where bills may be paid by them. The Dockery Act provides (section 5) that the Comptroller of the Treasury shall, under the direction of the Secretary of the Treasury, prescribe the forms of keeping and “ ren *78 dering ” all public accounts. These forms were prescribed and approved, and their use enjoined by a circular (section 38), which, with copies of the approved forms, is set out in 14 Comp. Dec. 945 et set/. The Quartermasters Manual also enjoins their use. See Manual Quartermaster Corps, sec. 1964; Army Regulations, sec. 650. Some changes have been made in these forms in unessential features. Copies of the forms approved in 1915 appear in the findings of fact. It was the duty of the transportation companies to render their accounts on these prescribed forms and the duty of the disbursing officer was limited to paying the bill as rendered. No alterations could be made in it and when paid it constituted the officers' voucher to be submitted to the auditor examining his accounts. The importance, of requiring parties to follow the prescribed forms and requiring also that the disbursing agents pay bills according to these forms and no other is emphasized when it is noted that the Dockery Act (sec. 15) makes it the duty of the Secretary of the Treasury to lay before Congress each year an accurate combined statement of the receipts and expenditures of public moneys during the preceding fiscal year. Directed by statute to be, and actually prescribed as directed, the required forms must be given a status similar to regulations which the head of a department, is authorized to make.
There can be no doubt that the disbursing quartermasters knew that they could only pay vouchers rendered on the prescribed forms, and that the transportation companies were themselves well informed of this fact. , Such is the practice, and in some of the cases heard in this court belonging to the class of cases typified by the instant case it has been frankly admitted by counsel for the companies that the disbursing officers could not pay vouchers in any other than the prescribed form and could not pay any other sum than that claimed to be due upon the face of the voucher. This is but a recognition of the fact that the duties of these officers are purely ministerial. No authority to decide controverted questions is granted to them. They are special agents with very limited powers. When plaintiff rendered its bills and was paid, it was charged with full notice of the limitations *79 upon the agent’s authority to act for the Government. Presentation to him furnished a convenient way for it to receive payment and obviated the otherwise necessary process of sending the bills direct to the auditors in Washington. But voluntarily choosing this more convenient method, the plaintiff could not enlarge the legal authority of the special agent. If the bills had been rendered as in the form and amount it is now claimed they should have been paid, the disbursing officer would not have paid them or part of them. His duty was to pay the bill as rendered or to refuse payment, in which case the account could have gone to an auditor for direct settlement. The latter could have allowed part and disallowed part, and his action would be subject to revision by the comptroller. It is to be noted, however, that the Dockery Act provides in terms that “ any person accepting payment under a settlement by an auditor shall be thereby precluded from obtaining a revision of such settlement as to any items upon which payment is accepted.” The practice, therefore, is that when the auditor’s allowance is objected to and a revision by the comptroller desired, no payment can be received by the creditor until the comptroller’s decision is had. The receipt, of payment in such case precludes further action by the comptroller. Such being the policy of the statute where settlement is sought from an auditor who may allow part and disallow part, it would be an unusual thing to find authority in a mere disbursing officer to bind the Government by receiving notice that the payment' he makes, notwithstanding it is the entire “ amount claimed,” is not in fact what it purports to be. The officer’s duty being plain and his authority limited, it is not to be presumed that the parties intended he should exceed his authority. No right is to be predicated on an official’s breach of duty or his violation of law if the other party knowingly participates therein. See Russell case, 18 Wall. 623, 630. If the required certificate of the correctness of the bills as rendered was true, the other statement thereon was without meaning. If unwilling to accept payment of its bills rendered in full discharge of the Government’s liability. *80 the course was open to present them to the auditor or to bring suit in this court. The acceptance of payment was thoroughly inconsistent with the alleged protest. See Willard, Sutherland & Co. caise, 262 U. S. 489-494. The statute of limitations applicable to the Court of Claims is sis years, and if the finality of settlements by the agencies designated can be kept'open by a proceeding such as we-are now asked to uphold, the Government’s carefully constructed accounting system can be greatly impaired, if not rendered practically useless, so far as finality of settlement is concerned. It is to be observed that the balances which are certified by the auditors to the Division of Bookkeeping and Warrants upon the settlement of public accounts are “ final and conclusive upon the executive branch of the Government.” See section 8 of Dockery Act. The person whose accounts are settled by the auditor and others may have the settlement revised by the comptroller, whose action is “ final and conclusive upon the executive branch of the Government,” except where the Secretary of the Treasury directs a reexamination of an account. If it be conceded that a settlement thus made is not always conclusive on the person whose account is being settled, and that he in a proper case by appropriate steps may seek relief in the courts, it is yet significant that the system offered by the Government is one of finality and conclusiveness so far as itself is concerned, at least, unless brought into court by the other party to the settlement. The disbursing officer’s vouchers do not reach the auditor until his accounts come on for settlement. In the meantime the disbursing officer has drawn on Government funds with which to make payment, and has retained the voucher in his possession. The creditor has been paid, but the supposed notice of part payment is known to the disbursing officer alone, who is not required to make any report of it to any other official. The alleged notice remains unnoticed until, as in the instant case, six or more years elapse from the time of some of the payments. The mere statement of the situation shows it to be objectionable when we have in view the purposes of the accounting system and the limited authority of disbursing agents. If the statement on the bills ever had *81 any virtue, it was lost or waived when plaintiff accepted the disbursing agent’s check.
While the foregoing would dispose of the plaintiff’s case, a statute is called to our attention that should receive consideration. This is section 424 of the transportation act of 1920, amending section 16 of the interstate commerce act. See 41 Stat. 491. Manifestly a large part of plaintiff’s asserted claim is barred by the statute of limitations of six years, suit not .having been brought until February 2, 1921. The Government contends in cases similar to this that the limitation statute in the transportation act of 1920 is applicable. It provides that: “(3) All actions at law by carriers subject to this act for recovery of their charges, or any part thereof, shall be begun within three years from the time, the cause of action accrues, and not after.” The language is inclusive of the kind of actions brought by plaintiff. It is seeking to recover its published tariff rates as applicable to certain Government employees less the amounts which it claims to have received as part payment only of its bills. Prescribing a statutory limitation of actions different from the general statute applicable to suits in the Court of Claims is not without precedent. To illustrate: Suits to recover taxes erroneously or illegally collected may be brought, but the limitation of actions is less than six years. (Rev. Stat. sec. 3227.) The remedial purposes of the prescribed limitation of actions by transportation companies can very well extend to suits against the Government if suits like the instant one can be maintained at all. The interstate commerce act, 24 Stat. 379, 387, limits the application of the act as regards handling property of the United States, but the limitation of actions provided by the late statute does not, in terms at least, except suits against the Government by railroad companies. See United States v. Baltimore & Ohio R. R. Co., 80 I. C. C. 143.
We think the petition should be dismissed. And it is so ordered.
Graham, Judge; Hay, Judge; Downey, Judge; and Booth, Judge, concur.