

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00358-CV

———————————————

KATIM ENDEAVORS, INC., Appellant

V.

LOCKHEART CHAPEL, INC., Appellee

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2017-007142-3

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Katim Endeavors, Inc. ("Katim") complains about the denial of its right to specific performance of a real estate contract entered into with Appellee Lockheart Chapel, Inc. ("Lockheart"). In two issues, Katim is appealing both the trial court's denial of its motion for summary judgment and the trial court's granting of Lockheart's motion for partial summary judgment. Because Lockheart did not prove its entitlement to summary judgment as a matter of law and because there is a fact issue regarding whether Katim was "ready, willing, and able to perform," we reverse and remand to the trial court for further proceedings.

## II. BACKGROUND

On February 4, 2016, Katim, as buyer, and Lockheart, as seller, entered into a commercial real estate contract whereby Katim would purchase real property located at 3005 Merrick Street in Fort Worth for $25,000. The contract provided in paragraph 5, "Not later than 3 days after the effective date, buyer [Katim] must deposit $1.00 as earnest money with Texas Secure Title . . . ." The effective date of the contract was "the date the title company receipts this contract after all parties execute the contract." Page 14 of the contract provided a form of an "Escrow Receipt." Pursuant to paragraph 10 of the contract, closing was to occur "[w]hen under a seperate [sic] contract another buyer is found." All closing costs were to be paid by Katim and the new buyer.

By letter dated September 26, 2017, Katim's attorney stated that Katim had received the second contract to sell the property, that it was depositing the $25,000 purchase price in the attorney's trust account, and that it was asking Lockheart to close on the property.

On November 14, 2017, Katim filed suit for specific performance against Lockheart. In the petition, Katim alleged that it "ha[d] performed all of the obligations imposed on [Katim] by the Agreement except payment of the purchase price," which Katim alleged was tendered on September 26, 2017, but Lockheart refused to accept. The petition goes on to state that Katim is "ready, willing, and able to pay the purchase price." In addition to specific performance, Katim sought to recover attorneys' fees and costs.

In response, Lockheart filed an original answer and counterclaim, which it amended twice. In "Defendant's Third Amended Answer and Second Amended Counterclaims," Lockheart set out special exceptions,[1] a general denial, a request for declaratory judgment, and an allegation of breach of contract, which Lockheart stated entitled it to attorneys' fees.

Lockheart, on December 12, 2017, sent a "notice" to Katim claiming the contract was terminated because Katim "did not make the earnest money deposit with Texas Secure Title Company as required by Paragraph 5.A." Three days later, a copy

---

[1]The record does not contain a ruling on the special exceptions.

3

of the contract and the $1 earnest money were delivered to the title company. On the

same day, Nancy Gonzalez, a bookkeeping assistant with the title company,

acknowledged receipt of the contract and the earnest money by signing the "Escrow

Receipt" on page 14 of the contract. The "Escrow Receipt" states, "The title

company acknowledges receipt of: A. the contract on this day <u>12-15-17</u> (effective

date); B. earnest money in the amount of $<u>1.00</u> [i]n the form of <u>cash</u> on <u>12-15-17</u>."

Thereafter, both sides filed competing traditional motions for summary

judgment.[2] Lockheart's motion for partial summary judgment identified two "issues":

1.  Is Katim Endeavors' claim for specific performance defeated as a
    matter of law based on the judicial admission in the petition for
    specific performance that the contract attached to its petition is
    the contract Katim Endeavors seeks to specifically enforce and
    the undisputed facts [sic] it failed to meet the conditions it agreed
    to meet in the contract?
2.  Has Katim Endeavors breached the contract as a matter of law by
    filing suit on an unenforceable contract?

In its motion for partial summary judgment, Lockheart attached the original

petition, deposition of Martin Garcia—the corporate representative of Texas Secure

Title Company, affidavit of Garcia, affidavit of David M. Lewis—President of

---

[2]It is difficult to identify the specific summary judgment grounds in both motions. The term "grounds" means the reasons that entitle the movant to summary judgment. *Garza v. CTX Mortg. Co. LLC*, 285 S.W.3d 919, 923 (Tex. App.—Dallas 2009, no pet.). A summary judgment movant must state specific grounds for relief in the motion. *Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 889 (Tex. App.—Dallas 2011, no pet.). Here, neither motion specified "grounds" for summary judgment. *See* Tex. R. Civ. P. 166a(c). Rather, each motion identified only "issues."

Lockheart, and deposition excerpts of William Hays—corporate representative of Katim. In his deposition, Garcia testified that while the title company had "received" the contract in January or February of 2016, Nancy Gonzalez, who is in "HR" and is a "bookkeeping assistant" with the title company, acknowledged "receipt" of the contract and $1 earnest money on December 15, 2017. However, in his affidavit, Garcia stated that the title company's records "reveal[] no executed or unexecuted copy of [the contract.]" Further, he testified that the title company never received the second contract with another buyer.

By affidavit, Lewis also stated that Lockheart's records "reveal[] no executed or unexecuted copy of [the contract.]" Hays testified in his deposition that the first time any earnest money was submitted to the title company was on December 15, 2017, which was a few days after Katim received written notice that Lockheart canceled the contract.

Based on the summary judgment evidence, Lockheart argued that specific performance was defeated as a matter of law because Katim "never timely paid the earnest money and it never tendered the contract of the third party to the title company along with the purchase price." Further, Lockheart contended that "[b]ecause Katim wrongly sued Lockheart whereby its suit for specific performance is defeated," Lockheart is entitled to its reasonable and necessary costs.

In its motion for summary judgment, Katim presented four "issues":

1. What is the proper interpretation of Paragraph 24 of the contract defining the "effective date" of the contract?
2. Is Buyer entitled to specific performance in this case?
3. Did Buyer tender performance or was tender excused?
4. Has Buyer established that it is willing and able to perform the contract?

Katim's summary judgment evidence included an affidavit of Hays, an affidavit of Katim's attorney—Rick Disney, and the deposition of Garcia. Hays's affidavit included the contract with the blank "Escrow Receipt," the September 26, 2017 letter from Katim's attorney, the December 12, 2017 letter from Lockheart terminating the contract, the December 15, 2017 letter from Katim's attorney conveying the contract and earnest money to the title company, and the contract with the completed "Escrow Receipt." In addition, Hays testified in his affidavit, "We have the funds readily available to close on this transaction for the agreed purchase price of $25,000.00," and "[t]he Buyer is ready, willing and able to complete the sale." Attached to the affidavit was a copy of the unsigned "second contract." Based on the summary judgment evidence, Katim argued that it was entitled to specific performance.

By "Final Judgment" signed October 5, 2018, the trial court stated that it had signed an August 16, 2018 order[3] granting Lockheart's motion for partial summary judgment that denied all relief sought by Katim[4] and "determined that Plaintiff Katim

[3]This earlier order is not part of the appellate record.

[4]The partial summary judgment addressed all claims except for attorneys' fees.

6

. . . had breached the contract." The judgment ordered that Katim recover nothing on its claim for specific performance against Lockheart. Further, the judgment reflected stipulated attorneys' fees to be recovered by Lockheart against Katim. Katim appeals from this judgment.

## III. DISCUSSION

### A. General Standard of Review for Motions for Summary Judgment and General Law on Construing Contracts

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Under the summary judgment standard set forth in Texas Rule of Civil Procedure 166a(c), the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c);

7

*MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (1986). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). A defendant moving for summary judgment on the plaintiff's cause of action assumes the burden of showing as a matter of law that the plaintiff has no cause of action. *See Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex. 1983). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Phan Son Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999).

When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary-judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. We should then render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

When construing a written contract, the primary concern of the court is to ascertain the parties' intent as expressed in the contract's terms. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009). Contract language

8

that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Id.*

To ascertain the parties' true intentions when interpreting a contract, we examine the entire agreement in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). If the language is unambiguous, we must enforce the contract as written. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008).

## B. Contentions on Appeal

Katim did not present a single, broad point of error on appeal, wherein it claims that the trial court erred in granting Lockheart's motion for summary judgment and in denying Katim's motion for summary judgment. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). Rather, Katim presents two issues, with one issue containing four subissues.[5]

Katim's first issue asks, "Has Katim shown that it is entitled to specifically enforce the commercial real estate contract?" Under the first issue, Katim asks whether it breached the contract, whether it tendered the purchase price or was tender excused, whether the contract required Katim to deliver the second contract, and

---

[5]Because Katim nevertheless challenges all of the reasons for which the trial court could have granted or denied summary judgment, it has sufficiently challenged the rulings.

whether Katim showed that it was ready, willing and able to close. The second issue asks, "Did Katim breach or invalidate the Contract by suing prior to the 'effective date' of the Contract?"

We have grouped the issues into two categories. First, we look at whether the filing of the lawsuit was in itself a breach of the contract. Second, we examine whether either Katim or Lockheart was entitled to summary judgment as a matter of law on Katim's specific performance claim.

## C.    Analysis

### 1.    Whether filing suit was in itself a breach of contract

In its motion for partial summary judgment, Lockheart repeatedly focuses on the fact that Katim filed suit prior to performing its contractual obligations. On appeal, Lockheart poses the issue, "[D]o the undisputed facts in the record establish that Katim breached the contract as a matter of law by filing suit on it when it had failed to perform its contractual obligations?"

While the original petition was filed prior to tender of performance by Katim, there was no objection to the pleadings. Special exceptions were filed, but no ruling regarding them is contained in the record. And, in addition to the original petition, the summary judgment evidence contains additional evidence setting out facts that occurred after the petition was filed.

Filing suit prior to the development of all facts sufficient to show that an injury has occurred or is likely to occur raises a question of ripeness. *Waco Indep. Sch. Dist. v.*

*Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). Ripeness, one of several categories of justiciability, prevents premature adjudication. *City of Weslaco v. Borne*, 210 S.W.3d 782, 787 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied) (citing *Perry v. Del Rio*, 66 S.W.3d 239, 249 (Tex. 2001) and *Patterson v. Planned Parenthood of Houston & Se. Texas*, 971 S.W.2d 439, 442 (Tex. 1998)). "[A] determination of ripeness should not necessarily be limited to the facts and circumstances of the case as they existed at the time the lawsuit was filed." *City of Weslaco*, 210 S.W.3d at 788. Dismissal of the lawsuit is not required if the case has "subsequently matured." *Id.*

In addition, defects and omissions in pleadings can be waived. Tex. R. Civ. P. 90; *see Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 937 (Tex. 1992). And, while defects should be pointed out by special exception, a defendant must obtain a ruling on its special exceptions or else they are waived. Tex. R. Civ. P. 90; *Shelton v. Kalbow*, 489 S.W.3d 32, 54 n.28 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Smith v. Grace*, 919 S.W.2d 673, 678 (Tex. App.—Dallas 1996, writ denied). A party relying on an opponent's pleadings as judicial admissions of fact must protect the record by objecting both to the introduction of controverting evidence and to the submission of a jury question on the admitted fact. *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989).

The record here contains no ruling on the special exceptions filed by Lockheart. Further, there were no objections filed to any of the summary judgment evidence, even though the evidence went beyond the scope of the original petition.

11

Rather, both parties provided summary judgment evidence that established facts that occurred after the original petition was filed. Therefore, for all of these reasons, we conclude that filing of the original petition was not in itself a breach of the contract. Therefore, summary judgment on Lockheart's breach of contract claim was improper on this ground.

> **2. Was either party entitled to summary judgment on Katim's specific performance claim**

Specific performance is an equitable remedy that may be awarded for breach of contract. *See DiGisueppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008). The essential elements of a contract claim are (1) the existence of a valid contract, (2) the plaintiff's performance or tendered performance, (3) the defendant's breach, and (4) the plaintiff's damages sustained as a result of the breach. *Luccia v. Ross*, 274 S.W.3d 140, 146 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). To be entitled to specific performance, a party must show that the contract is valid and enforceable. *See Antwine v. Reed*, 199 S.W.2d 482, 485 (Tex. 1947).

> *a. The effective date of the contract*

To establish whether Katim performed or tendered performance, we must first decide the "effective date" of the contract. Paragraph 24 of the contract states, "The effective date of this contract for the purpose of performance of all obligations is the date the title company receipts this contract after all parties execute this contract." Katim contends that the title company did not "receipt" the contract until the title

company completed the "Escrow Receipt" on page 14 of the contract. It is undisputed that the "Escrow Receipt" was not completed until December 15, 2017. On the other hand, Lockheart contends that the effective date was when the contract was received by the title company in January or February of 2016.

Receiving a contract is not the same as receipting a contract. To assume they are the same would give rise to the problem that occurred here, wherein the title company is unsure of the date that the contract was received. But, by requiring completion of the "receipt," all parties are provided an exact date from which to commence performance under the contract.

A distinction between "received" and "receipted" has been made in many cases. *See Sweeny v. United States*, 84 U.S. 75, 78 (1872) (stating money was "received and receipted" by the claimant); *Strasburger Enters., Inc. v. TDGT Ltd. P'ship*, 110 S.W.3d 566, 571, n.6 (Tex. App.—Austin 2003, no pet.) (defining "[r]eceipted grain" under the Texas Agriculture Code as "grain that is stored in a public grain warehouse and for which a Texas grain warehouse receipt has been issued and has not been cancelled" and comparing with "[o]pen storage grain" which is "received" for storage and not covered by a negotiated warehouse receipt or owned by the warehouse in which it is stored); *Farkas v. Second Congress, Ltd.*, Nos. 03-11-00807-CV, 03-13-00379-CV, 03-13-00388-CV, 2014 WL 1691645, at *2 (Tex. App.—Austin Apr. 25, 2014, no pet.) (mem. op.) (discussing the "effective date" of a contract where it was not "receipted" by the title company).

A Florida court addressed the difference between "receipted" and "received" in a case that allowed termination of a contract only when made in writing and delivered to the other party and "duly receipted." *Institutional & Supermarket Equip., Inc. v. C&S Refrigeration, Inc.*, 609 So.2d 66, 68 (Fla. 4th Dist. Ct. App. 1992). It held,

> The contract provides that termination occurs when written notice to that effect is delivered *and duly receipted for by* ISE. "Receipted" is a verb as used in the foregoing sentence, and it is defined in Webster's New World Dictionary, as ". . . 2. To write a receipt for, as goods, etc." It does not mean the same thing as "received" which is defined merely as "to get, accept, or acquire."

*Id.*

Similarly, in this case, the contract's effective date was when it was "receipted" by the title company. The summary judgment evidence established that since the "Escrow Receipt" was not completed until December 15, 2017, this was the effective date of the contract, which triggered the other provisions of the contract.

### b. *Performance or tendered performance*

Katim argues that it "effectively tendered performance, or alternatively, tender was excused." In his letter of September 26, 2017, Katim's lawyer informed Lockheart that "Katim has deposited $25,000.00 in my firm's trust account[,]" and "[w]e hereby formally tender that amount to you to be paid to Lockheart Chapel, Inc. at closing." Lockheart counters that "there was never a valid tender to the title company of the purchase price." In addition, Lockheart complains that "the second contract to sell the property required by Katim was never delivered to the title

14

company so it could prepare for closing since the second buyer was obligated to pay closing costs with Katim."

An essential element in obtaining the equitable relief of specific performance is that the party seeking such relief must plead and prove he was ready, willing, and able to timely perform his obligations under the contract. *DiGiuseppe*, 269 S.W.3d at 593. "The plaintiff's burden of proving readiness, willingness and ability is a continuing one that extends to all times relevant to the contract and thereafter." *Id.* at 594 (citing 25 Richard A. Lord, *Williston on Contracts* § 67:15, at 236–37 (4th ed. 2002)).

"A corollary to this rule is that when a defendant refuses to perform or repudiates a contract, the plaintiff may be excused from actually tendering his or her performance to the repudiating party before filing suit for specific performance." *Id.* However, even though a repudiation may excuse the plaintiff from actually tendering performance, courts require that the plaintiff demonstrate his own readiness, willingness, and ability to perform before the court orders specific performance. *Id.* at 595 (citing Edward Yorio, *Contract Enforcement: Specific Performance and Injunctions* § 6.4, at 144–45 (1989)).

With respect to tender requirements, Lockheart argues that the Texas Supreme Court's opinion in *Baucum v. Great Am. Ins. Co. of New York*, 370 S.W.2d 863, 866 (Tex. 1963) controls. In that case, the court stated, "The tenderer must relinquish possession of it for a sufficient time and under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire its

15

possession." *Id.* (citing *Universal Credit Co. v. Cole*, 146 S.W.2d 222, 227 (Tex. App.—Amarillo 1940, no writ)).

Katim relies on language in *Perry v. Little*, 419 S.W.2d 198, 200 (Tex. 1967). In deciding that case, the Texas Supreme Court looked to the language in *Williston on Contracts*:

> It is said that the strict rules of tender are not applicable to a conditional offer to perform a concurrent condition; that what is essential is that it shall appear to the court and shall have been made clear to the other party to the contract that the exchange agreed upon would be carried out immediately if the latter would do his part. This requirement involves both ability on the part of the plaintiff to perform and an indication of that ability to the other party. The actual production of the money or other thing which the plaintiff is to give is said to be unnecessary.

*Id.* (quoting 6 *Williston on Contracts* (3rd ed.)).

However, neither *Baucum* nor *Perry* are applicable here. *Baucum* involved the payment of a judgment debt. And, unlike in *Perry*, which involved an action for damages arising out of a breach of an agreement to purchase shares of stock, the contract here does not impose concurrent conditions on the parties. While Katim pled it was "ready, willing, and able" to pay the purchase price, Lockheart's answer challenged this statement.

"Contested fact issues, including prerequisites to obtaining equitable relief, are for the jury to resolve, and the burden of proof is on the party seeking a remedy." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (citing *DiGiuseppe*, 269 S.W.3d at 596)). Lockheart did not concede or stipulate in the

16

trial court that Katim was ready, willing, and able to perform. While Lockheart does not dispute that Katim gave the money to its attorney, it argues that Katim's attorney never went to either the title company or Lockheart telling them he "was ready to hand it over [to] them at once." Further, since Lockheart's so-called repudiation letter was sent several months after the letter Katim argues was its tender but three days before the second contract and earnest money were delivered to the title company, it raises a fact issue regarding whether repudiation or tender occurred first.

In addition, the only summary judgment evidence of the "second contract," which was required before closing, is an unsigned contract attached to the affidavit of Hays. The summary judgment evidence was uncontroverted that the title company never received any "second contract."

Performance or tendered performance was disputed, and as the party seeking specific performance, Katim had the burden of proof. Katim brought forward some disputed evidence of performance or tendered performance. Therefore, Lockheart was not entitled to summary judgment as there was a disputed fact issue regarding whether Lockheart failed to perform a condition of the contract. Similarly, Katim was not entitled to judgment as a matter of law because there was a fact issue regarding its performance. Since both parties presented competing evidence regarding whether Katim was "ready, willing, and able" to perform, and each party was dependent on this evidence to support their summary judgment motions, neither party was entitled to summary judgment. Therefore, the trial court erred in granting Lockheart's motion

17

for summary judgment but did not err by denying Katim's motion for summary judgment because Katim was not entitled to judgment as a matter of law.

## IV. CONCLUSION

Having determined that prematurely filing suit for specific performance was not in itself a breach of the contract, but also concluding that there is a fact issue regarding whether Katim was ready, willing, and able to perform the contract, we hold that neither party was entitled to summary judgment as a matter of law. Therefore, we reverse the final judgment and remand to the trial court for further proceedings.

/s/ Dana Womack

Dana Womack
Justice

Delivered: August 29, 2019

18