**CITY OF WESLACO, Texas, et al., Appellants,**

v.

**Carl L. BORNE, et al., Appellees.**

**No. 13–05–126–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Dec. 14, 2006.

---

**32.** *Brokenleg v. Butts*, 559 S.W.2d 853, 856 (Tex.Civ.App.-El Paso 1977, writ ref'd n.r.e.).

**33.** *Id.* at 855.

**34.** *Id.* at 856.

**35.** *Id.*

784 

Robert L. Drinkard, Ricardo J. Navarro, Denton, Navarro, Rocha & Bernal, Harlingen, Javier Gonzalez, Royston, Rayzor, Vickery & Williams, Brownsville, Carroll S. Barbour, San Antonio, Nicholas A. Parma, Royston, Rayzor, Vickery & Williams, Houston, Will W. Pierson, Royston, Rayzor, Vickery & Williams, Corpus Christi, for appellants.

Daniel G. Gurwitz, Lisa Powell, Atlas & Hall, McAllen, for appellees.

Before Justices YAÑEZ, CASTILLO, and GARZA.

## OPINION

Opinion by Justice GARZA.

On August 22, 2005, we issued a memorandum opinion dismissing this case for lack of jurisdiction. *See City of Weslaco v. Borne,* No. 13–05–126–CV, 2005 WL 2000842, 2005 Tex.App. LEXIS 6783 (Corpus Christi, August 22, 2005, no pet. h.). Appellees filed a motion for rehearing on September 6, 2005. Shortly thereafter, appellants filed a motion for correction of judgment, asking the Court to change its judgment to indicate that their issues challenging the trial court's subject matter jurisdiction had been sustained. On January 11, 2006, while appellees' motion for rehearing was still pending, appellees filed an "emergency motion for temporary injunctive order or for remand to consider interim relief." Subsequently, this Court withdrew its prior opinion and ordered a rehearing. We now issue the following opinion reversing the trial court's order denying appellants' pleas to the jurisdiction. In doing so, we dismiss as moot appellees' emergency motion and appellants' motion for correction of judgment.

## Background

This case is essentially a landlord-tenant dispute. It involves a mobile home park known as the Lakeview Senior Mobile Home Park ("Lakeview Park"). Appellants own and operate Lakeview Park. Appellees are current and former residents of Lakeview Park who claim that appellants are wrongfully forcing them from their homes.

The dispute began when appellees learned of appellants' plans to transfer ownership of Lakeview Park to the Texas Parks and Wildlife Department for development as a birding center. Appellees are against the proposal because Texas Parks and Wildlife will not accept the property for development if people continue to reside there. Appellees understand this condition to mean that appellants will ultimately force them from their homes to carry out their plan of developing a birding center.

Before any transfer of ownership could occur, appellees sued appellants for fraud, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act, breach of contract, statutory fraud in a real estate transaction, statutory violations of Chapter 94 of the Texas Property Code, and permanent injunctive relief preventing appellants from "selling, transferring, encumbering, leasing, or otherwise disposing of the Lakeview property without protecting or allowing for the plaintiffs' legal rights to remain in the park for as long as they can care for themselves."

Appellants answered the lawsuit and filed special exceptions. They also filed pleas to the jurisdiction, raising ripeness and governmental immunity as grounds for dismissing appellees' claims without a trial on the merits. The trial court denied the pleas to the jurisdiction and this interlocutory appeal ensued. *See* Tex. Civ. Prac. & Rem Code Ann. § 51.014(a)(8) (Vernon 2006).

Before addressing the merits of the appeal, we pause to specify the identities and roles of the three appellants before this Court: (1) the City of Weslaco owns Lakeview Park; (2) the Weslaco Development Committee, Inc. ("WDC") previously owned and operated Lakeview Park; and (3) and the Economic Development Corporation of Weslaco ("EDC") is a successor corporation to WDC and currently oper-

ates Lakeview Park in behalf of the City of Weslaco. Wherever possible, we will refer to appellants collectively; however, at times, it will be necessary to discuss their roles in this litigation individually.

## Standard of Review

■ A trial court's ruling on a plea to the jurisdiction is a question of law subject to de novo review. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). In determining whether jurisdiction exists, we accept all allegations in the pleadings as true. *See City of San Antonio v. Butler,* 131 S.W.3d 170, 174 (Tex.App.-San Antonio 2004, pet. denied). The plaintiff has the burden to plead facts affirmatively demonstrating the court's jurisdiction. *Id.* Therefore, we may consider evidence presented to the trial court to the extent necessary to determine the jurisdictional facts. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000).

## I. Ripeness

In our prior opinion, we concluded that appellees' claims against appellants were not ripe and accordingly sustained the seventh issues raised in appellants' briefs. *See City of Weslaco v. Borne,* No. 13–05–126–CV, 2005 WL 2000842, 2005 Tex.App. LEXIS 6783 (Corpus Christi, August 22, 2005, no pet. h.). On rehearing, we begin our analysis by revisiting that holding.

■ Ripeness is one of several categories of justiciability. *Perry v. Del Rio,* 66 S.W.3d 239, 249 (Tex.2001). The doctrinal purpose of ripeness is to prevent premature adjudication. *See Patterson v. Planned Parenthood,* 971 S.W.2d 439, 442 (Tex.1998). The issue of ripeness thus questions when a particular action may be brought. *Id.* Ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur.

*Id.* The focus of the ripeness inquiry is therefore on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all. *Id.*

■ Ripeness involves both jurisdictional and prudential concerns. *See id.* at 442–43. Jurisdictionally, ripeness operates to prevent Texas courts from issuing judicial advisory opinions, which are constitutionally prohibited. *See* Tex. Const. art. II, § 1 (separation of powers), art. IV, §§ 1, 22 (attorney general is part of the executive department and is empowered to issue advisory opinions to the governor and other officials); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993) (holding that separation of powers prohibits courts from issuing advisory opinions, a function of the executive department). Ripeness also has a pragmatic, prudential aspect that is directed toward conserving judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes. *Patterson,* 971 S.W.2d at 443.

Appellants have filed two appellate briefs in this case: one for the City of Weslaco and the other for WDC and EDC. The seventh issue raised in the City of Weslaco's appellate brief makes the following argument on ripeness:

> The trial court erred in denying the Appellant's Pleas to the Jurisdiction because the matter before the trial court lacked "ripeness" in that Appellees are basing their claims on a contingent or hypothetical event, (i.e. the breach of an alleged oral lease through their eviction), which had not happened at the time the lawsuit was filed, at the time the Pleas were urged or at the time the Pleas were denied.

Appellant City of Weslaco's Appellate Brief p. 20.

The seventh issue in the brief filed by WDC and EDC also argues that appellees' claims are not ripe for review:

> Appellees' case is based entirely upon hypothetical facts and events that have not come to pass. Appellees complained that, on December 10, 2003, the mayor of Weslaco informed several of the Appellees of the City's intention to breach purported promises to allow Appellees to live perpetually at the Lakeview Park. The Appellees admit in the [live petition] ... that the City subsequently took the position that the mayor's statement may not have been an official statement of the City's intentions. No defendant in this case has actually acted to evict any of the Appellees. The alleged announcement by the mayor was subsequently called into question, thus rendering the statement an example of a hypothetical fact: hypothetically the City of Weslaco intends to evict Appellees. Appellees' case is based entirely on what might happen to them at some point in the future.

Appellate Brief of Appellants WDC & EDC p. 15.

■ The Texas Supreme Court has held that a determination of ripeness should not necessarily be limited to the facts and circumstances of the case as they existed at the time the lawsuit was filed. *See Del Rio*, 66 S.W.3d at 252; *Patterson*, 971 S.W.2d at 442. A claim's lack of ripeness when filed is not a jurisdictional infirmity requiring dismissal if the case has subsequently matured. *Del Rio*, 66 S.W.3d at 252.

■ In the time between the issuance of our original opinion and the date on which we granted rehearing, appellees supplemented the record with 15 affidavits demonstrating that appellants have taken measures such as disconnecting water and electrical utilities to force appellees from their homes. The supplemented record also shows that eviction proceedings have been commenced by appellants in justice court to remove appellees from Lakeview Park. Based on these facts and circumstances, we conclude that appellants' ripeness arguments to this Court have become untenable. The developments in this case, specifically, the post-appeal efforts to evict appellees from their homes, demonstrate that this case presents a real, live controversy that is not dependent on uncertain or contingent future events. Accordingly, we overrule appellants' issues challenging the ripeness of the claims against them.

## II. Governmental Immunity

■ In their remaining issues, appellants contend that the trial court erred in denying their pleas to the jurisdiction based on governmental immunity.[1] Ac-

---

1. WDC and EDC claim entitlement to governmental immunity based on Texas Revised Civil Statute Annotated article 5190.6 (Vernon Supp.2006), commonly known as the Development Corporation Act of 1979. The Act expressly extends governmental immunity to economic development corporations. *See id.* § 4B(m) ("[T]he corporation is a governmental unit and its actions are governmental functions."); *Purdin v. Copperas Cove Econ. Dev. Corp.*, 143 S.W.3d 290, 295 (Tex.App.-Waco 2004, pet. dism'd); *Rayl v. Borger Economic Dev. Corp.*, 963 S.W.2d 109 (Tex.App.-Eastland 1998, no pet.). Appellees contend that governmental immunity does not extend to WDC and EDC. Their contentions in this regard are focused largely on the inapplicability of section 4A(j) of article 5190.6. *See* Tex. Rev.Civ. Stat. Ann. art. 5190.6 (Vernon Supp. 2006). They also argue that WDC does not enjoy governmental immunity because it was created before article 5190.6 was enacted. We disagree with these contentions. Section 4B(m) grants WDC and EDC governmental immunity. We therefore do not need to address appellees' contentions that section 4A is inapplicable, as the two sections of article 5190.6 contain functionally equivalent terms on governmental immunity. Furthermore,

cording to appellants, the claims filed by appellees cannot be maintained because appellants enjoy governmental immunity to suit. In contrast, appellees maintain that governmental immunity is no bar to suit because the complained-of actions involve proprietary functions and not governmental functions for which there is immunity. In addition, appellees also contend that governmental immunity has been statutorily waived as to all three appellants. They cite sections 51.013, 51.033, and 51.075 of the Texas Local Government Code as a waiver of the City of Weslaco's immunity to suit, and they cite section 23(a)(9) of article 5190.6 of the Texas Revised Civil Statutes as a waiver of immunity to suit for WDC and EDC. *See* Tex. Loc. Gov't Code Ann. §§ 51.013, 51.033, & 51.075 (Vernon 1999); Tex.Rev.Civ. Stat. Ann. art. 5190.6, § 23(a)(9) (Vernon Supp.2006).

### A. Applicable Law

■ Governmental immunity protects against lawsuits for money damages to the extent a municipality engages in the exercise of governmental functions. *See Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001); *City of Tyler v. Likes*, 962 S.W.2d 489, 501 (Tex.1997); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). Nearly 160 years ago, the Texas Supreme Court first acknowledged the common law rule that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847). In the time since that initial pronouncement, the rule has become firmly established in both common law and statutes and is now applied to the state's various governmental entities. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex.2006).

■ Governmental immunity has developed into two distinct forms: (1) immunity from suit, which bars suit against a governmental entity altogether; and (2) immunity from liability, which bars enforcement of a judgment against a governmental entity. *Id.* at 331; *Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970). The distinction between immunity from suit and immunity from liability is an important one. Even if a governmental entity has acknowledged liability on a claim, it cannot be sued without the legislature's consent. *Tex. DOT v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). Conversely, the legislature's consent to suit is insufficient to recover on a claim against a governmental entity if immunity to liability has not been waived. *Fed. Sign.*, 951 S.W.2d at 405.

■ From this explanation, we can also observe another important distinction between the two forms of immunity. Immunity from suit implicates a court's subject matter jurisdiction, whereas immunity from liability does not. *See Jones*, 8 S.W.3d at 638. This is because immunity from liability protects against a final judgment and not against the suit itself. *Tooke*, 197 S.W.3d at 331. Consequently, the two types of immunity must be raised in different ways. A plea to the jurisdiction is the appropriate procedural vehicle for challenging a court's jurisdiction based on immunity to suit. *See Jones*, 8 S.W.3d at 638. In contrast, immunity to liability must be pled as an affirmative defense

---

we have no basis for limiting the scope of article 5190.6 to corporations created after its enactment and accordingly decline to do so. Having concluded that governmental immunity extends to WDC and EDC, we now turn to

the parties' respective arguments on whether the trial court erred in denying the pleas to the jurisdiction filed by the City of Weslaco, WDC, and EDC.

under rule 94. *See* Tex.R. Civ. P. 94; *Jones*, 8 S.W.3d at 638.

Appellees argue that the foregoing principles of governmental immunity have no bearing on this case because the allegations of their claims involve proprietary functions rather than governmental functions. Before addressing this contention, we note that our opinion will not address any issues of immunity to liability, as that issue cannot be properly raised in a plea to the jurisdiction and accordingly has no place in an interlocutory appeal from the denial of a plea to the jurisdiction. *See* Tex.R. Civ. P. 94; *Jones*, 8 S.W.3d at 638.

■■■■■ The proprietary-governmental dichotomy has been used to determine a municipality's immunity from suit for tortious conduct. *Tooke*, 197 S.W.3d at 343. The distinction has not been a clear one, but generally speaking, a municipality's proprietary functions are those conducted "in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government," whereas its governmental functions are "in the performance of purely governmental matters solely for the public benefit." *Id.* (quoting *Dilley v. City of Houston*, 148 Tex. 191, 222 S.W.2d 992, 993 (1949)). A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions. *Id.* The Texas Supreme Court has never *held* that this same distinction determines whether immunity from suit is waived for breach of contract claims. *Id.* Nevertheless, the Texas Supreme Court has *stated*, "Contracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals." *Gates v. City of Dallas*, 704 S.W.2d 737, 738–39 (Tex.1986). It has also *stated* that a city that contracts in its proprietary

role is "clothed with the same authority and subject to the same liabilities as a private citizen." *Id.* Based on these statements, we proceed in our analysis with the assumption that the proprietary-governmental dichotomy extends to breach of contract claims.

## B. Analysis

### 1. Proprietary–Governmental Dichotomy

■■■■■ The common thread between all of appellees' claims is a contention that appellants cannot plan and develop a birding center on the property where Lakeview Park is located. The alleged wrongfulness of appellants' actions stem from contractual rights claimed by appellees. According to their live petition, the City of Weslaco promised appellees that they "would never be asked to leave Lakeview [Park], as long as they were able to care for themselves." Because development of the birding center under appellants' current proposal would necessarily involve evicting appellees from Lakeview Park, appellees have sued to stop development of the birding center and to recover money damages.

Appellees contend that their lawsuit challenges proprietary functions and that there is therefore no governmental immunity from suit. Their arguments are based largely on the Fourth Court of Appeals' opinion in *Schertz v. Parker* and the list of governmental and proprietary functions enumerated in section 101.0215 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.0215 (Vernon 2005); *Schertz v. Parker*, 754 S.W.2d 336 (Tex.App.-San Antonio 1988, no writ).

In *Schertz*, the court of appeals held that "the regulation and administration of the mobile home park by the City . . . as authorized by the city ordinance was a pro-

prietary function." *Schertz*, 754 S.W.2d at 340. Appellees claim that the same result should follow in this case. We disagree.

■ At the outset, we note that *Schertz* involved immunity from liability and not immunity from suit. *Id.* at 339–41. We have already discussed the differences between the two forms of immunity and have expressly limited our opinion to the issue of immunity from suit, the only form of immunity which may be properly challenged on an interlocutory appeal from the denial of a plea to the jurisdiction. *See Jones*, 8 S.W.3d at 638. The distinction between the issues is critical in this case, especially because the analysis in *Schertz* was based on the city's failure to carry the burden of "proving and submitting" the defense of governmental immunity to liability. *Schertz*, 754 S.W.2d at 340–41. In contrast, the burden in this case was on appellees to overcome immunity to suit by alleging jurisdictional facts to demonstrate that their claims against appellants arose from proprietary functions. *See Jones*, 8 S.W.3d at 638 (explaining that immunity to suit implicates subject matter jurisdiction); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (explaining that Texas law "requires the pleader to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause").

We are also mindful of the absence in *Schertz* of any reference or discussion of section 101.0215 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.0215. Although the *Schertz* court concluded that the city's regulation of a mobile home park was proprietary and not governmental, that determination seems to have been based largely on the conclusion that the city had placed on itself the burden of regulating mobile home parks, as evidenced by city ordinances authorizing its actions. The court reasoned as follows:

Liability will not be imposed upon a municipality if the event sued upon occurs when the municipality is engaged in performance of those duties which are imposed on all municipalities, without corporate consent, and exclusively for public purposes. *See Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex.1986). This would not be true when the municipality imposes upon itself a special duty or authority, as in the present case.

*See Schertz*, 754 S.W.2d at 340.

■ We need not disagree with the reasoning in *Schertz* to hold that its precedent is inapplicable to the case at bar. Having dealt strictly with the issue of immunity from liability, *Schertz* provides no guidance on the issue of immunity from suit. Furthermore, the opinion's exclusive reliance on common law principles to address the proprietary-governmental dichotomy is an approach of dubious validity given the Texas Supreme Court's recent opinion in *Tooke*. In that case, the supreme court emphasized that "waiver of governmental immunity involves policies best considered by the legislature." *Tooke*, 197 S.W.3d at 344. The supreme court also noted that it "could be argued that a city lacks authority to waive its own immunity from suit by ordinance or charter." *Id.* Together, these statements strongly indicate that the reasoning in *Schertz* should not be extended to the issue of immunity to suit presented in this appeal.

The Texas Constitution authorizes the legislature to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." *Id.* at 343 (quoting Tex. Const. art. XI, § 13). Section 101.025 of the civil practice and remedies code contains examples of governmen-

tal and proprietary functions. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.0215. Appellees point out that the list of governmental functions does not include "operating a mobile home park." We agree with appellees on this point, but note that neither does the list of proprietary functions.

The list of governmental functions does include "community, neighborhood, or senior citizen centers." *Id.* § 101.0215(a)(17). Although we do not conclude that the functions in this case fit squarely within that classification, we do find it noteworthy that appellees' live petition refers to Lakeview Park as a "retirement community," a description which seems to fit at least partly within "community, neighborhood, or senior citizen centers." *Id.*

We also find it noteworthy that appellees' "emergency motion for temporary injunctive order" complained of actions by appellants that allegedly denied appellees access to "common areas" in Lakeview Park, including the "Green Barn" and "Red Barn," which house recreational equipment, *including* pool tables, a shuffleboard table, a ping-pong table, and a loom for quilting. *See* Appellees' EMERGENCY Motion for Temporary Injunctive Order or Order for Remand to Consider Interim Relief p. 4. The facilities also provide Lakeview Park residents with a common meeting area, a community swimming pool, a laundry machine, and a full kitchen. *Id.* pp. 4–5. Appellees claim that these "items" (with the exception of the swimming pool) "were purchased, installed, and maintained by current and former residents of Lakeview [Park]." *Id.* p. 5. Regardless of this contention, there is no question that the City of Weslaco owns the facilities. There is also no question that the facilities were made available as community facilities for recreational purposes. This is especially significant because "recreational facilities, including but not limit-ed to swimming pools, beaches, and marinas" are listed as governmental functions. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(a)(23).

The civil practice and remedies code also specifies that "parking facilities" are governmental functions. *Id.* § 101.0215(a)(25). Neither our independent research nor the parties' briefs have yielded any prior precedent addressing whether a mobile home park can be properly classified as a "parking facility" under the civil practice and remedies code. *See id.* We conclude that as a facility for parking mobile homes, Lakeview Park is at least partly covered by the "parking facility" classification. *See id.*

Also included as governmental functions in the civil practice and remedies code are "parks and zoos" and "zoning, planning, and plat approval." *See id.* § 101.0215(a)(13), (29). Appellees contend that the birding center is not a park or a zoo, but they have produced no precedent to support their contention. Even assuming that the birding center could not be a park, we would still be faced with the question of whether it may be properly considered as a "recreational facility." *See id.* § 101.0215(a)(23). Again, without holding that any one of these classifications perfectly describes the functions in this case, we conclude that the development of a birding center falls under the classifications of "parks and zoos," "recreational facilities," and "zoning, planning, and plat approval." *See id.* § 101.0215(a)(13), (23), (29).

In sum, we have concluded that the functions at issue relate to "community, neighborhood, or senior citizen centers," "recreational facilities, including but not limited to swimming pools, beaches, and marinas," "parking facilities," "parks and zoos," and "zoning, planning, and plat approval." *See id.* § 101.0215(a)(13), (17),

(23), (25), (29). In holding that this case involves governmental and not proprietary functions, we note that subsection (c) of section 101.0215 states, "The proprietary functions of a municipality do not include those governmental functions listed under Subsection (a)." *See id.* § 101.0215(c). Having concluded that the functions at issue fall within five of the classifications of governmental activities listed in subsection (a), we are precluded from holding that the activities are proprietary. *See id.*

Appellees contend that this conclusion cannot follow because representatives of the City of Weslaco admitted that the functions at issue in this case are not governmental. In support of this contention, appellees offered the trial court the following deposition testimony:

**Attorney for Appellees:** Would you agree that operating a mobile home park is not a city function?

\* \* \*

**Representative:** I agree.

In addition, appellees relied on the following statement made by the mayor of the City of Weslaco:

When the City of Weslaco purchased the Lakeview Mobile Home Park, the City of Weslaco never intended to operate a mobile home park. Home-rule cities have charters and laws that apply to them and operating a mobile home park is not a city function.

Based on this evidence, appellees argue that "the city itself has admitted that operation of the park is not a governmental function." Brief of Appellees p. 16.

■ We construe the foregoing argument as one of waiver, which brings us back to *Tooke* and the distinction between immunity to suit and immunity to liability. As discussed above, immunity to suit involves a court's subject matter jurisdiction. *See Jones,* 8 S.W.3d at 638. Subject mat-

ter jurisdiction cannot be waived. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446 ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties.").

Furthermore, in *Tooke,* the Texas Supreme Court stated that it "could be argued that a city lacks authority to waive its own immunity from suit by ordinance or charter." *Tooke,* 197 S.W.3d at 344. Although that language may be construed as dicta in future opinions, the same reasoning could be applied to the present case. If a municipality has only a limited and questionable ability to waive its immunity to suit by formal promulgation of an ordinance or charter, a municipality's representative, *a fortiori,* has an even less effective ability to do so through informal speech or writings. Even this limited ability, however, assumes that subject matter jurisdiction may be expanded through waiver by admission, an assumption which runs contrary to long-standing precedent. *See, e.g., Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

Finally, appellees contend that the activities in question must be proprietary because Lakeview Park is located outside the city limits of the City of Weslaco. We disagree. If anything, the location of the park indicates that the activities are governmental. After all, a municipalities' proprietary functions must be "for the benefit only of those within its corporate limits." *Tooke,* 197 S.W.3d at 343 (quoting *Dilley,* 222 S.W.2d at 993). The parties agree that Lakeview Park is not within the City of Weslaco's corporate limits. It is also clear from the allegations of the petition that appellees have reaped benefits from appellants' ownership and operation of Lakeview Park. Given that appellees reside outside appellants' corporate limits, we cannot conclude that "only those within" the City of Weslaco's corporate limits benefit from

appellants ownership and operation of Lakeview Park. *See id.* Thus, we do not find the location of Lakeview Park to be a consideration that militates in favor of classifying the functions as proprietary.

For these reasons, we conclude that governmental immunity to suit applies to the causes of action alleged by appellees.

### 2. Statutory Waiver of Immunity to Suit

As noted above, appellees also contend that immunity to suit was legislatively waived as to the City of Weslaco by sections 51.013, 51.033, and 51.075 of the Texas Local Government Code. *See* Tex. Loc. Gov't Code Ann. §§ 51.013, 51.033, & 51.075. They further contend that immunity to suit was legislatively waived as to WDC and EDC by section 23(a)(9) of article 5190.6. Tex.Rev.Civ. Stat. Ann. art. 5190.6, § 23(a)(9).

#### a. Sections 51.013, 51.033, & 51.075

■ In *Tooke*, the Texas Supreme Court held that "the words 'sue and be sued,' standing alone, are if anything, unclear and ambiguous. The effect of similar clauses, like 'plead and be impleaded,' is indistinguishable, and therefore those clauses do not, by themselves, waive immunity." *Tooke*, 197 S.W.3d at 342. This is the same language used in sections 51.013, 51.033, and 51.075. *See* Tex. Loc. Gov't Code Ann. §§ 51.013, 51.033, & 51.075. Accordingly, we cannot conclude that those statutes have waived the City of Weslaco's immunity to suit.

#### b. Section 23(a)(9) of Article 5190.6

■ A similar result follows under section 23(a)(9) of article 5190.6. Tex.Rev.Civ. Stat. Ann. art. 5190.6, § 23(a)(9). That statute uses the language "sue and be sued, complain and defend, in its corporate name." *Id.* In *Tooke*, the Texas Supreme

Court cited a similar provision in article 5190.6 and stated that it has "nothing to do with immunity at all." *Tooke*, 197 S.W.3d at 341–42 n. 74 (citing Tex.Rev.Civ. Stat. Ann. art. 5190.6, § 5(D)(I) (stating that an industrial development corporation "may sue and be sued")). Following *Tooke*, we conclude that no immunity to suit was waived by section 23(a)(9) of article 5190.6.

### III. Conclusion

The activities complained of in this lawsuit are governmental functions and are therefore protected by governmental immunity. Appellees have failed to demonstrate that immunity to suit has been waived. We therefore conclude that the trial court lacks subject matter jurisdiction to hear the claims alleged against appellants. We reverse the order denying appellants' pleas to the jurisdiction and render a judgment dismissing appellees' claims.