**Affirmed and Majority and Concurring Opinions filed July 18, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00254-CV

## HITCHCOCK INDUSTRIAL DEVELOPMENT CORPORATION, Appellant

### V.

## CRESSMAN TUBULAR PRODUCTS CORPORATION, Appellee

**On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Cause No. 21-CV-0375**

## C O N C U R R I N G   O P I N I O N

The Supreme Court of Texas's opinion in *Rosenberg* is on point and requires a holding in this case that section 504.107(b) does not confer any governmental immunity on a Type A economic development corporation. *See Rosenberg Development Corporation v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 744–52 (Tex. 2019). The doctrine of vertical stare decisis mandates that this court follow this binding precedent whether the justices on this panel agree or disagree with it. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022). This

concurring opinion addresses the following points not addressed in the majority opinion: (1) whether absent the need to harmonize Local Government Code section 505.106(b) with sections 501.055(b) and 501.010, it would be unreasonable to interpret section 505.106(b) as not granting Type B corporations governmental immunity as to tort claims; and (2) whether it would be helpful for the Supreme Court of Texas to clarify under what circumstances, if any, the Texas Legislature may confer immunity from suit and liability on an entity not entitled to this immunity under the common law.

**Absent the need to harmonize section 505.106(b) with sections 501.055(b) and 501.010, it would be unreasonable to interpret section 505.106(b) as not granting Type B corporations governmental immunity as to tort claims.**

In *Rosenberg Development Corporation v. Imperial Performing Arts, Inc.*, a Type B economic development corporation (the "Type B Corporation") argued in this court that it had governmental immunity from suit as to breach-of-contract and declaratory-judgment claims asserted against it. *See* 526 S.W.3d 693, 701 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 571 S.W.3d 738 (Tex. 2019). This court first determined that the Type B Corporation did not enjoy governmental immunity under the common law. *See id*. at 702–07. This court then considered whether in Local Government Code section 505.106(b), the legislature conferred governmental immunity on Type B economic development corporations. *See* Tex. Loc. Gov't Code Ann. § 505.106(b) (West, Westlaw through 2023 4th C.S.); *Rosenberg Development Corp.*, 526 S.W.3d at 708–09. Section 505.106(b) of the Local Government Code, a provision nearly identical to section 504.107(b), provides that "[f]or purposes of [the Tort Claims Act], a Type B [economic development] corporation is a governmental unit and the corporation's actions are

2

governmental functions."[1] Tex. Loc. Gov't Code Ann. § 505.106(b). This court concluded that in section 505.106(b), the legislature conferred governmental immunity, including immunity from suit, on Type B economic development corporations but only as to tort claims. *See Rosenberg Development Corp.*, 526 S.W.3d at 708–09. Because no tort claims were at issue in the *Rosenberg* appeal, this court concluded that section 505.106(b) did not confer governmental immunity on the Type B Corporation as to the claims involved in the appeal. *See id*. Concluding that the Type B Corporation did not have governmental immunity as to those claims, this court affirmed the part of the trial court's plea-to-the-jurisdiction order that the corporation challenged on appeal. *See id*.

The Supreme Court of Texas agreed with this court that the Type B Corporation did not enjoy governmental immunity under the common law. *See Rosenberg Dev. Corp.*, 571 S.W.3d at 748–52. As to the Corporation's assertion that the legislature conferred immunity from suit on the Corporation in section Local Government Code 505.106(b), the high court's conclusion that the legislature did not confer immunity may be justified by the need to harmonize section 505.106(b) with sections 501.055(b) and 501.010.[2] *Compare* Tex. Loc. Gov't Code Ann. §505.106(b) (stating that "[f]or purposes of [the Tort Claims Act], a Type B [economic development] corporation is a governmental unit and the corporation's actions are governmental functions"); *with id*. §501.055(b) (stating

---

[1] Section 504.107(b) provides that "[f]or purposes of [the Tort Claims Act], a Type A [economic development] corporation is a governmental unit and the corporation's actions are governmental functions." Tex. Loc. Gov't Code Ann. § 504.107(b).

[2] Chief Justice Hecht wrote separately, disagreeing with the high court's interpretation of section 505.106 of the Local Government Code. *See Rosenberg Dev. Corp.*, 571 S.W.3d at 752–53 (Hecht, C.J., concurring). Chief Justice Hecht concluded that the legislature provides in section 505.106(b) that class B economic development corporations have "a governmental unit's immunity from suit and liability in tort." *Id*. at 753.

that "a[n] [economic development] corporation is not a political subdivision or a political corporation for purposes of the laws of this state"); *and id*. §501.010 (stating that "[a] unit may not delegate to a[n] [economic development] corporation any of the unit's attributes of sovereignty, including the power to tax, the power of eminent domain, and the police power"); *In re Morris*, 498 S.W.3d 624, 630 (Tex. App.—Houston [14th Dist.] 2016 [mand. denied], orig. proceeding) (stating that "[i]f provisions of a single statute appear to conflict, we try to harmonize them to effectuate both by assigning each a meaning that will permit both to stand"). But, in addressing section 505.106(b), the high court made several problematic statements. *See Rosenberg Dev. Corp.*, 571 S.W.3d at 747–48.

The high court noted that section 505.106(b) provides, "[f]or purposes of [the Tort Claims Act], a Type B [economic development] corporation is a governmental unit and the corporation's actions are governmental functions." Tex. Loc. Gov't Code Ann. §505.106(b). Nonetheless, the Supreme Court did not conduct a statutory analysis of the text of this statute and the cases interpreting it. The high court said, "we also do not consider the existence *vel non* of [the Type B Corporation's] statutory immunity under the Development Corporation Act because section 505.106 does not purport to grant immunity." *See Rosenberg Dev. Corp.*, 571 S.W.3d at 747. This language is imprecise and confusing because the Type B Corporation asserted that this statute conferred immunity on it, and four courts of appeals had concluded that this statute or a statute with substantially similar language conferred immunity. *See Rosenberg Development Corp.*, 526 S.W.3d at 708–09; *Weir Bros., Inc. v. Longview Economic Development Corp.*, 373 S.W.3d 841, 845–46 (Tex. App.—Dallas 2012, no pet.); *City of Weslaco v. Borne*, 210 S.W.3d 782, 788 n.1 (Tex. App.—Corpus Christi 2006, pet. denied); *Rayl v. Borger Econ. Dev. Corp.*, 963 S.W.2d 109, 114 (Tex. App.—Amarillo

4

1998, no pet.). The high court in *Rosenberg* appears to say that it need not consider whether section 505.106 confers immunity on the Type B Corporation because this statute does not expressly state that it confers immunity on Type B Corporations. *See Rosenberg Dev. Corp.*, 571 S.W.3d at 747. If this is what the court is saying, it raises several questions: (1) why is an express statement that immunity is being conferred required for the high court to consider the Type B Corporation's contention that the statute confers immunity? (2) is an express statement that immunity is being conferred required for the legislature to confer immunity from suit and liability on an entity not entitled to this immunity under the common law? (3) if such an express statement is required, why is it not enough if the legislature uses language whose unambiguous meaning is that an entity not entitled to immunity under the common law enjoys immunity from suit and liability? and (4) is an express statement that immunity is being conferred sufficient for the legislature to confer immunity from suit and liability on an entity not entitled to this immunity under the common law or is something more required? The high court in *Rosenberg* does not answer these questions. *See Rosenberg Dev. Corp.*, 571 S.W.3d at 746–47.

In *Rosenberg* the Supreme Court also states that "subsection (b) [of section 505.106] merely imports the Texas Tort Claims Act's limitations on liability and damages." *Id*. at 747. Thus, the court appears to be saying that the only work the legislature accomplished in section 505.106(b) is the importation of limitations on liability and damages from the Tort Claims Act. *See id*. Yet, elsewhere in the *Rosenberg* opinion the high court states that in section 505.106(b) "the Legislature expressly expanded section 101.001's governmental-unit definition to include economic development corporations" and that therefore the Type B Corporation "is a governmental unit for purposes of the interlocutory appeal authorized by

5

section 51.014(a)(8)." *Id*. at 748. For this reason the high court concluded that Type B corporations are entitled to appeal interlocutory orders denying their pleas to the jurisdiction. *See id*. Under section 505.106(b), for the purposes of the Tort Claims Act, a Type B corporation "is a governmental unit and the corporation's actions are governmental functions." Tex. Loc. Gov't Code Ann. § 505.106(b). Though section 505.106(b) needs to be harmonized with the rest of the Development Corporation Act, the text of this section does not appear to merely import limitations on liability and damages; rather it appears to give Type B corporations the status of a governmental unit under the Tort Claims Act, which would entitle these corporations to immunity from suit as to tort claims, unless this immunity has been waived. *See Catalina Development, Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003) (stating that "[g]enerally, a governmental unit possesses both immunity from liability and immunity from suit").

In *Rosenberg* the high court stated that "section 505.106 merely purports to limit the remedies available when economic development corporations perform governmental functions." *Rosenberg Dev. Corp.*, 571 S.W.3d at 747. Though section 505.106(a) purports to exculpate Type B corporations and others from liability for damages arising from the performance of a governmental function by Type B corporations, section 505.106(b) does not merely purport to limit remedies when Type B corporations perform governmental functions. Tex. Loc. Gov't Code Ann. § 505.106. Instead, section 505.106(b) provides that for the purposes of the Tort Claims Act, a Type B corporation is a governmental unit and acts only in a governmental, not a proprietary, capacity. *See id*.

In *Rosenberg*, the high court also stated that the Tort Claims Act provides a limited waiver of sovereign or governmental immunity but does not create immunity. *See id*. Under the Tort Claims Act's unambiguous language, one of the

6

purposes of the Tort Claims Act is to waive the governmental immunity from suit and liability in tort of governmental units by creating liability against governmental units for several tort claims and by waiving these units' immunity from suit and liability to the extent of this created liability. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001, *et seq.*; *Gulf Coast Center v. Curry*, 658 S.W.3d 281, 284–87 (Tex. 2022); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *State Dep't of Highways & Public Transp. v. Gonzalez*, 82 S.W.3d 322, 326 (Tex. 2002); *Osman v. City of Fort Worth*, No. 02-21-00117-CV, 2022 WL 187984, at *8 (Tex. App.—Fort Worth Feb. 17, 2022, pet. denied) (mem. op.). Though the Tort Claims Act does not create governmental immunity, this fact does not mean that a governmental unit for the purposes of the Tort Claims Act does not have any governmental immunity. If a governmental unit did not have governmental immunity as to tort claims, it would not be a governmental unit for the purposes of the Tort Claims Act because (1) the Tort Claims Act would not be able to create tort liability for the governmental unit, which would exist under the common law absent governmental immunity from tort liability, and (2) there would be no governmental immunity for the Tort Claims Act to waive under Civil Practice and Remedies Code section 101.025. *See* Tex. Civ. Prac. & Rem. Code Ann. §101.025. Under the unambiguous language of the Tort Claims Act, imposing limitations on liability and damages as to existing tort claims against entities that do not have sovereign or governmental immunity is not a purpose of the Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001, *et seq.*; *Gulf Coast Center*, 658 S.W.3d at 284–87.

Section 505.106(b) provides that for the purposes of the Tort Claims Act, a Type B corporation is a governmental unit and the corporation's actions are governmental functions. Tex. Loc. Gov't Code Ann. § 505.106(b). One of the

purposes of the Tort Claims Act is to waive the governmental immunity from suit and liability in tort of governmental units by creating liability against such units for several tort claims and by waiving the units' immunity from suit and liability to the extent of this created liability. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001, *et seq.*; *Gulf Coast Center*, 658 S.W.3d 284–87. Because of this purpose and because governmental units are generally entitled to governmental immunity, absent the need to harmonize section 505.106(b) with sections 501.055(b) and 501.010, it would be unreasonable to interpret section 505.106(b) as not granting Type B corporations governmental immunity as to tort claims for which a governmental unit's governmental immunity has not been waived. *See* Tex. Loc. Gov't Code Ann. § 505.106(b); *Catalina Development, Inc.*, 121 S.W.3d at 705.

**It would be helpful for the Supreme Court of Texas to clarify under what circumstances, if any, the Texas Legislature may confer immunity from suit and liability on an entity not entitled to this immunity under the common law.**

There are various possible rules as to when a statute may be interpreted as conferring immunity from suit and liability on an entity not entitled to this immunity under the common law. Clear guidance from the Supreme Court of Texas on this point would be helpful for the analysis of the various statutes that parties may argue constitute a legislative conferral of immunity from suit and liability on an entity not entitled to this immunity under the common law.

One possible rule would be that if under the ordinary rules of statutory construction, the unambiguous language of a statute provides that an entity not entitled to immunity from suit or liability under the common law is entitled to immunity from suit and liability, then the entity enjoys this immunity without any requirement of an express statement to this effect and without the need for any analysis as to whether the entity is entitled to immunity under the common law. Though the Supreme Court of Texas does not appear to have ever expressly stated

8

this rule, the high court seems to have effectively followed this rule in two cases. *See Gulf Coast Center*, 658 S.W.3d 288–89; *Klein v. Hernandez,* 315 S.W.3d 1, 4–8 (Tex. 2010).

In *Gulf Coast Center v. Curry*, the Supreme Court held that Gulf Coast had governmental immunity from suit for a claim seeking to recover in excess of $100,000 per person in personal injury damages when the plaintiff was struck by a bus driven by a Gulf Coast employee. *See id*. at 286–89. The *Gulf Coast Center* court stated that an independent basis for its holding was evidence conclusively proving that Gulf Coast was a community center under Chapter 534 of the Health and Safety Code and therefore a unit of local government ("Unit of Local Government") based on the application of Health and Safety Code section 534.001(c), under which the Legislature provides that a community center is "a unit of local government, as defined and specified by [the Texas Tort Claims Act]." Tex. Health & Safety Code Ann. § 534.001(c)(1) (West, Westlaw through 2023 4th C.S.); *Gulf Coast Center*, 658 S.W.3d at 288–89. The *Gulf Coast* court did not require proof by the community center that it was a Unit of Local Government under the Tort Claims Act. *See Id*. In addition, the Supreme Court stated that the community center did not need to prove that it was performing a government function at the time of the allegedly tortious conduct to be entitled to governmental immunity from suit because section 534.001(c) did not require such proof. *See id.* at 289, n.8. Relying on this statute the high court stated, "Thus, the only relevant inquiry is whether Gulf Coast is a community center; if so, it is a unit of local government under the Tort Claims Act." *Id*. The *Gulf Coast* court did not analyze whether Gulf Coast was a unit of local government under the common law. *See id*. at 288–89. If a legislatively authorized entity that is not a political subdivision claims governmental immunity from suit under the common law, then

9

the entity must show that the allegedly actionable conduct was the performance of a governmental function. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 325–26 (Tex. 2006). However, the Supreme Court concluded that such proof was unnecessary since Gulf Coast was a Unit of Local Government by virtue of section 534.001(c).[3] *See Gulf Coast Center*, 658 S.W.3d at 289, n.8.

In *Klein v. Hernandez*, the Supreme Court of Texas said that in the context of coordinated or cooperative medical or dental clinical education under Health and Safety Code section 312.004, Baylor College of Medicine, a private, supported medical school is entitled to the same immunity as governmental entities under sections 312.006 and 312.007 of the Health and Safety Code. *See Klein v. Hernandez,* 315 S.W.3d 1, 4–8 (Tex. 2010); *see also Ruggeri v. Baylor College of Medicine*, No. 01-13-00353-CV, 2014 WL 4345165, at *1–2 (Tex. App.—Houston [1st Dist.] Aug. 2014, no pet.) (following *Klein* and holding that Baylor College of Medicine, a private, supported medical school, had sovereign immunity from suit because the Legislature provided in sections 312.006 and 312.007 of the Health and Safety Code that supported medical schools should be treated as if they were state agencies, without any requirement that the school prove that it is a governmental entity or that it has sovereign immunity under the common law). In *Klein*, the court relied upon section 312.007(a):

> **A** medical and dental unit, **supported medical** or dental **school,** or coordinating entity **is a state agency, and a** director, trustee, officer, intern, **resident,** fellow, faculty member, or other associated health

[3] Health and Safety Code chapter 534 provides that a community center is also a political subdivision, but only for the purposes of Local Government Code chapter 172, the Texas Political Subdivision Employees Uniform Group Benefits Act. *See* Tex. Health & Safety Code Ann. § 534.001(c)(4); Tex. Local Gov't Code Ann. § 172.001, *et seq.* Chapter 534 does not provide that a community center is a political subdivision in general or for the purposes of the Tort Claims Act. *See* Tex. Health & Safety Code Ann. § 534.001, *et seq.*

care professional or employee **of a** medical and dental unit, **supported medical** or dental **school,** or coordinating entity **is an employee of a state agency for purposes of Chapter 104, Civil Practice and Remedies Code, and for purposes of determining the liability, if any, of the person for the person's acts or omissions while engaged in the coordinated or cooperative activities of the** unit, **school,** or entity.

Tex. Health & Safety Code § 312.007(a) (emphasis added as in *Klein*); *Klein*, 315 S.W.3d at 4–5. The *Klein* court also relied upon section 312.006(a), which provides in pertinent part that a supported medical or dental school "engaged in coordinated or cooperative medical or dental clinical education under Section 312.004 . . . is not liable for its acts and omissions in connection with those activities except to the extent and up to the maximum amount of liability of state government under Section 101.023(a), Civil Practice and Remedies Code, for the acts and omissions of a governmental unit of state government under Chapter 101, Civil Practice and Remedies Code." Tex. Health & Safety Code § 312.006(a). The *Klein* court concluded that (1) "a supported medical school does not need to be a governmental unit—like UT Medical Branch—to be entitled to immunity; the Health and Safety Code bestows such status by its own terms"; and (2) "the Legislature intended through Chapter 312 to treat Baylor like other governmental entities providing services at public hospitals, extending the same protection and benefits to Baylor and its residents who work at these hospitals." *See Klein*, 315 S.W.3d at 8.

Thus, although the Supreme Court of Texas may not have explicitly stated that the Legislature has the power to enact a statute granting sovereign or governmental immunity to an entity that would not otherwise be entitled to immunity under the common law, the high court appears to have interpreted other statutes to do precisely that. *See Gulf Coast Center*, 658 S.W.3d at 286–89; *Klein*, 315 S.W.3d at 4–8.

11

In *Rosenberg*, the Supreme Court stated that, "[b]ecause section 505.106 merely purports to limit the remedies available when economic development corporations perform governmental functions, we need not consider whether the Legislature can confer immunity by statute or only waive it." *Rosenberg Dev. Corp.*, 571 S.W.3d at 747. The high court also stated, "Our holding today does not imply that the Legislature could de facto grant an entity immunity simply by designating it as a 'governmental entity.' The common-law rule of immunity is exclusively for the judiciary to define, and in doing so, we do not just consider whether the entity performs governmental functions, but also the 'nature and purposes of immunity.'" *Id.* at 750. Thus, it appears that the high court in *Rosenberg* did not address whether or under what circumstances the legislature may confer sovereign or governmental immunity by statute on an entity not entitled to sovereign or governmental immunity under the common law, but the high court also made some statements suggesting that the legislature may not do so. *See id.*

After *Rosenberg* was decided, in *University of the Incarnate Word v. Redus*, the Supreme Court of Texas concluded that the provisions of the Education Code authorizing private universities to commission and employ peace officers do not confer sovereign immunity on the officers' private university employers. *See* 602 S.W.3d 398, 401–02 (Tex. 2020). The high court determined that the legislation in question did not reflect an intent that private universities possess sovereign immunity and that the legislature did not express that private universities have independent immunity separate from the derivate benefit the universities may receive from their officers' official immunity. *See id.* at 402. In *Redus*, there was no express statement by the legislature that the private universities have sovereign immunity, and the high court found no intent by the legislature that the private

12

universities have this immunity. *See id*. at 404–12. Nonetheless, the *Redus* court made a statement suggesting that the legislature may not be able to ever confer sovereign or governmental immunity on an entity not entitled to this immunity under the common law: "If, however, an entity's underlying 'nature, purposes and powers' are not congruent with an arm of State government, then the legislature cannot 'de facto grant' it sovereign immunity." *Id*. at 405.

In *El Paso Education Initiative, Inc. v. Amex Properties, LLC*, the Supreme Court of Texas held that an open-enrollment charter school was entitled to governmental immunity from suit and liability to the same extent as public schools. *See* 602 S.W.3d 521, 526–30 (Tex. 2020). In the context of the breach-of-contract claim at issue in that case, the Texas Legislature expressly provided that "an open-enrollment charter school . . . is immune from liability and suit to the same extent as a school district" Tex. Educ. Code Ann. § 12.1056(a) (West, Westlaw through 2023 4th C.S.); *see* Tex. Educ. Code Ann. § 12.1058(a)(4),(c) (West, Westlaw through 2023 4th C.S.); *El Paso Education Initiative, Inc.*, 602 S.W.3d at 529; *Neighborhood Centers, Inc. v. Walker*, 544 S.W.3d 744, 753 (Tex. 2018). Despite the applicability of this statute whose plain text expressly conferred immunity from liability and suit on the open-enrollment charter school, the Supreme Court did not proceed by interpreting this plain text and then applying it absent a valid challenge to the enforceability of the statute. *See El Paso Education Initiative, Inc.*, 602 S.W.3d at 526–30; *Jones v. Del Andersen & Assocs*., 539 S.W.2d 348, 351 (Tex. 1976) (stating that "when [the Supreme Court of Texas has] determined the legislative intent expressed in unambiguous language, our function is not to question the wisdom of the statute. In the absence of constitutional infirmities, we must apply [the statute] as written"). Instead, the high court conducted an analysis as to whether the open-enrollment charter school was entitled to governmental

13

immunity under the common law, considering the statute as part of the analysis, and concluding that the school was entitled to governmental immunity under the common law. *See El Paso Education Initiative, Inc.*, 602 S.W.3d at 526–30. In doing so, the Supreme Court stated that (1) "Sovereign immunity is a common-law doctrine, initially developed without any legislative or constitutional enactment. It therefore remains the judiciary's responsibility to define the boundaries of the common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance" and (2) "Though the courts determine governmental immunity's boundaries, the legislature informs that determination." *Id*. at 527 (internal quotations and footnotes omitted). Justice Blacklock, joined by Chief Justice Hecht, authored a concurring opinion, in which he asserted that the court should not have employed the common law analysis because the unambiguous text of Education Code section 12.1056(a) rather than the common law analysis controlled, given that no challenge had been made to the constitutionality of section 12.1056(a). *See id*. at 535–36 (Blacklock, J., concurring).

There are numerous Texas statutes that parties may argue confer immunity from suit on entities not entitled to immunity from suit under the common law analysis for governmental or sovereign immunity. It would assist Texas courts in analyzing these arguments if the Supreme Court of Texas would clarify whether (1) under any circumstances a statute may be interpreted as conferring immunity from suit on an entity not entitled to immunity from suit under the common law absent an express statement in the statute to this effect; (2) under any circumstances a statute expressly conferring immunity from suit on an entity not entitled to immunity from suit under the common law may be given effect without the common law analysis being conducted; or (3) the common law analysis must always be applied to determine whether an entity enjoys immunity from suit under

14

sovereign or governmental immunity.

/s/    Randy Wilson
Justice

Panel consists of Justices Hassan, Poissant, and Wilson (Wilson, majority).

15